[No. B064789. Second Dist., Div. Six. June 3, 1993.]

MICHAEL O'BRIEN, as Conservator, etc., Plaintiff and Appellant, v.
JACK DUDENHOEFFER et al., Defendants and Respondents.

## COUNSEL

Diane M. Matsinger for Plaintiff and Appellant.

Rogers & Sheffield, R. Bruce MacKenzie and Sayre Macneil for Defendants and Respondents.

## OPINION

**YEGAN, J.**—We hold that an ex parte, lawful, and extant order appointing a temporary conservator of the estate of the conservatee constitutes an adjudication that the conservatee lacks the capacity to give away his or her real property.

Michael O'Brien appeals from the judgment entered following a court trial. The trial court found that a gift deed from octogenarian Nadine Gamelin, O'Brien's mother, to Jack and Susan Dudenhoeffer was valid. The deed was executed after O'Brien was made temporary conservator of Gamelin's person and estate. The trial court found, inter alia, that Probate Code section 1872 did not apply to temporary conservatees.[1] We reverse.

On May 17, 1989, O'Brien, Gamelin's only child, filed petitions for appointment as the temporary and permanent conservator over the person and estate of his mother who was 87 years old. The supporting documents contained in the superior court conservatorship file (case No. 176931), of which we take judicial notice as did the trial court, show the following: On May 6, 1989, Mrs. Gamelin was found unconscious in her mobilehome. The home was filthy and had no plumbing, water, stove or heating. A medical doctor opined that she was suffering severe dehydration, had blue feet which appeared to have been bitten by rats and "may" require amputation. He also opined she was suffering from "severe dementia and severe alzheimer's disease," and was unable to care for herself or her property. In April of 1989, a neighbor told the geriatric assessment nurse that he believed ". . . [s]omeone is trying to get her to sign over her property."

The ex parte petition for appointment as a temporary conservator was granted May 17, 1989, and the hearing on the appointment of the permanent conservator was set for June 19, 1989. On May 21, 1989, while a patient at Goleta Valley Hospital, Mrs. Gamelin deeded her real property to the Dudenhoeffers without consideration, i.e., as a gift. Susan Dudenheoffer had befriended Gamelin in 1982 when she was a student. She remained in intermittent contact with Gamelin thereafter.

---

[1] All further statutory references are to this code unless otherwise specified.

On June 21, 1989, O'Brien was appointed as the permanent conservator for Mrs. Gamelin without objection. On August 28, 1989, she died intestate.

On October 19, 1989, O'Brien filed an action seeking to void the transfer of the real property. He thereafter moved for summary judgment, relying on section 1872 and Civil Code section 40. His theory was that as of the date of the temporary order, Mrs. Gamelin lacked the legal capacity to give away her real property as a matter of law. The Dudenhoeffers, relying on *Board of Regents* v. *Davis* (1975) 14 Cal.3d 33, 37 [120 Cal.Rptr. 407, 533 P.2d 1047], responded with the assertion that these two statutes applied only to permanent conservatorships. On October 24, 1990, Judge Ronald Stevens agreed with the Dudenhoeffers and denied the summary judgment motion.

At the section 9860 trial, Judge Patrick McMahon agreed with Judge Stevens's prior legal determination that the temporary conservatorship order did not affect Mrs. Gamelin's legal capacity to convey her real property. He also found that respondents did not commit fraud or use undue influence in obtaining the deed. The effect of the judgment is that the Dudenhoeffers own the real property.

*Board of Regents* v. *Davis, supra,* 14 Cal.3d 33 (hereafter *Regents*) was an action to enforce a $150,000 pledge made by Mr. Davis while under a temporary conservatorship. The Supreme Court there concluded that unless a conservatee had been adjudged "a person 'for whom a guardian could be appointed' " (at p. 43) under the then existing statutes his legal incapacity had not been adjudicated. Therefore it upheld the gift. It is this holding on which respondents and the trial court relied. However, the 1975 statutory scheme on which *Regents* was based has been significantly changed.

In 1979 the Legislature enacted a major revision of the Probate Code relating to conservatorship and guardianship. Section 1872 was amended in 1979 and in pertinent part, provides: "(a) Except as otherwise provided in this article, the appointment of a conservator of the estate is an adjudication that the conservatee lacks the legal capacity to enter into or make any transaction that binds or obligates the conservatorship estate." Section 1870 defines a "transaction" as including making of a conveyance or gift.

Civil Code section 40 as amended in 1979, in pertinent part provides: "[T]he establishment of a conservatorship under Division 4 (commencing with Section 1400) of the Probate Code is a judicial determination of the incapacity of the conservatee for the purposes of this section."

Provisions regarding both temporary and permanent conservatorships are contained in division 4 of the Probate Code.

██ The issue is whether the statutory amendments supersede the holding of *Regents*. They do. As we shall explain, no other reasonable interpretation is possible. If respondents' and the trial court's position were correct, the temporary conservatorship order ". . . to protect property from loss . . ." was meaningless and in layman's terms the superior court judge's signature on the May 17, 1989 temporary order "wasn't worth the paper it was printed on."

We read section 1872, subdivision (a) and Civil Code section 40, as amended in 1979, in pari materia. ██ " ' "A statute must be construed 'in the context of the entire statutory [scheme] of which it is a part, in order to achieve harmony among [its] parts.' [Citation.]" ' . . . This principle applies even though the two provisions are in separate codes. [Citations.]" (*Unzueta v. Ocean View School Dist.* (1992) 6 Cal.App.4th 1689, 1695 [8 Cal.Rptr.2d 614].) ██ When so read, these two sections are not ambiguous and inexorably compel the conclusion that an order for conservatorship, temporary or permanent, is a judicial determination of incapacity to give away real property.[2]

██ " 'It is a prime rule of construction that the legislative intent underlying a statute [or statutes] must be ascertained from its language; if the language is clear, there can be no room for interpretation, and effect must be given to its plain meaning. [Citation.]' " (*Mutual Life Ins. Co.* v. *City of Los Angeles* (1990) 50 Cal.3d 402, 412 [267 Cal.Rptr. 589, 787 P.2d 996].) ██ Here the plain meaning of the two statutes dictates that we not even engage in statutory construction. Had the Legislature intended section 1872 subdivision (a) and Civil Code section 40 to apply only to permanent conservatorships, it surely would have said so.

Even if we were to assume some ambiguity in the statutes, application of well-settled rules of statutory construction compel the same conclusion, i.e. that the temporary conservatorship order renders the May 21, 1989 purported transfer void.

██ "The overriding principle of statutory construction is that the court should ascertain the intent of the Legislature and construe the statute to

---

[2]There is, of course, a different result for bona fide purchasers or encumbrancers if certain conditions are met: "A transaction that affects real property of the conservatorship estate, entered into by a person acting in good faith and for a valuable consideration and without knowledge of the establishment of the conservatorship, is not affected by any provision of this article or any order made under this article unless a notice of the establishment of the conservatorship or temporary conservatorship has been recorded prior to the transaction in the county in which the property is located." (§ 1875; 12 Witkin, Summary of Cal. Law (9th ed. 1990) Wills and Probate, § 884, pp. 944-945.)

effectuate that intent." (*Crespin* v. *Kizer* (1990) 226 Cal.App.3d 498, 509 [276 Cal.Rptr. 571].) " 'Where language [of a statute] is susceptible of more than one meaning, it is the duty of the courts to accept that intended by the framers of the legislation, so far as its intentions can be ascertained.' [Citations.] . . . To discern legislative intent, we must examine the legislative history and statutory context of the act under scrutiny. [Citations.]" (*Sand* v. *Superior Court* (1983) 34 Cal.3d 567, 570 [194 Cal.Rptr. 480, 668 P.2d 787].)

■ The legislative and judicial history with respect to the capacity of a conservatee plainly demonstrates that section 1872, subdivision (a) applies to temporary conservatorships.

■ "The interpretation of a statute . . . is a question of law, and we are not bound by evidence presented on the question in the trial court. (Citations.)" The "propriety of the use of extrinsic materials in determining legislative intent is a question which may properly be considered on appeal regardless of whether the issue was raised in the trial court." (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].) ■ We have granted appellant's motion to take judicial notice of the legislative history and Law Revision Commission reports presented. No objection has been made to our doing so. (Evid. Code, §§ 451, 453.)

These materials demonstrate the following: The subject of "incompetency" was raised extensively during the pendency of the 1979 legislation. "The Commission recommended continuing the rule of existing law that appointment of a conservator is not of itself an adjudication that the conservatee is legally incompetent to bind or obligate the conservatorship estate and that, unless the court specifically makes such an adjudication, the conservatee retains the capacity to make contracts, subject to disaffirmance by the conservator if the contract is not such as a reasonably prudent person might make and is not for necessaries. [Fn. omitted.] The Commission also recommended a flexible system for the court in order to broaden or limit the limited legal capacity that a conservatees otherwise would have." (15 Cal. Law Revision Com. Rep. (Dec. 1980), p. 490.) The "existing law" of course was the law as stated in *Regents*.

Illustrative that the original recommendation was to codify *Regents* is shown by the first draft of Assembly Bill No. 261 (Jan. 11, 1979), submitted by the commission to the Legislature. It proposed the following version of section 1872: "1872 (a) Except as otherwise provided in this article, upon appointment of a conservator of the estate, the legal capacity of the conservatee to bind or obligate the conservatorship estate is limited to transactions

into which a reasonably prudent person might enter. [¶] (b) Nothing in this section shall be construed to limit the powers and duties of the conservator under this division."

Proposed section 1873 authorized the court to broaden or restrict the conservatee's legal capacity to conduct transactions, but permitted the conservator to avoid such transactions if they were not those into which a reasonably prudent person might enter. Proposed section 1874 suggested a procedure by which the court might find that a conservatee was "seriously incapacitated" (subd. (a)), which would result in an adjudication of lack of capacity (subd. (b)).

"The Legislature was persuaded that a general rule preserving limited legal capacity for the conservatee would cause problems for the conservator in managing the conservatorship estate." (15 Cal. Law Revision Com. Rep., *supra*, p. 490.) Consequently, in the third draft the Legislature rewrote section 1872, subdivision (a) as it now appears. ■ "Successive drafts of a bill may be helpful in construing a statute . . . ." (*Clark* v. *Workers' Comp. Appeals Bd.* (1991) 230 Cal.App.3d 684, 695 [281 Cal.Rptr. 485].) ■ Section 1873 was redrafted to permit the court to broaden the capacity of a conservatee to enter into specified transactions. Subdivision (b)(2) of that section left intact the conservator's right to avoid those transactions not reasonably prudent. Section 1874, which had proposed findings of serious incapacity in order to completely incapacitate the conservatee, was deleted entirely.

The Assembly Committee reports leave no doubt that section 1872, subdivision (a) includes temporary conservatorships. In the report of the Assembly Committee of the Judiciary on Assembly Bill Nos. 261 and 167, the committee stated: "Sec. 1872. Effect of conservatorship on legal capacity of conservatee: [¶] *Comment:* Section 1872 is new. See also Civil Code § 40. Section 1872 continues the rule under prior law that appointment of a guardian for an adult constituted an adjudication of incapacity under Section 40 of the Civil Code and made void any contract entered into by the ward after such determination. Hellman Commercial Trust & Sav. Bank v. Alden, 206 Cal. 592, 604-05 . . . . For a discussion of the effect on legal capacity of the appointment of a conservator under prior law, see Board of Regents State Univs. v. *Davis, 14 Cal.3d 33* . . . ."

■ "Statements in legislative committee reports concerning the statutory purposes which are in accordance with a reasonable interpretation of the statute will be followed by the courts. It will be presumed that the Legislature adopted the proposed legislation with the intent and meaning expressed in committee reports." (*In re Marriage of Paddock* (1971) 18 Cal.App.3d 355, 359 [95 Cal.Rptr. 652].)

■ The committee's statement that *Regents* is "prior law" confirms the legislative intent to change the law. It also demonstrates that section 1872, subdivision (a) and Civil Code section 40 apply to temporary conservatorships since *Regents* involved a temporary conservatorship.

■ An amendment materially changing a statute following a court decision interpreting the statute in its original form is to be regarded as an indication of legislative intent to change the meaning of the law. (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155].) In fact, "[t]he very fact of amendment evidences a desire to change the existing law." (*Jordan* v. *Consolidated Mut. Ins. Co.* (1976) 59 Cal.App.3d 26, 48 [130 Cal.Rptr. 446].) We must reject an interpretation of the statute which would leave the prior judicial construction in effect. (*Associated Truck Parts, Inc.* v. *Superior Court* (1991) 228 Cal.App.3d 864, 869 [279 Cal.Rptr. 76].)

■ Thus, the legislative history shows that section 1872 applies to temporary conservatorships. Mrs. Gamelin was without legal capacity to make a gift of her residential real property from the time of the temporary May 17, 1989 order until the time of the hearing on the appointment of a permanent conservator on June 21, 1989. Had it been determined that she was not in need of a permanent conservator, the temporary orders would have been vacated on June 21, 1989, and she could have then given the property to the Dudenhoeffers thereafter. As indicated, this did not happen and a permanent order was entered. The temporary suspension of her rights was based on a "good cause" showing which was credited by the superior court on May 17, 1989. No factual showing at plenary section 9860 trial could be sufficient to overcome the temporary judicial determination. Thus, it matters not that at the section 9860 trial the superior court found that Mrs. Gamelin had the capacity to make the gift on May 21, 1989.

■ Assuming arguendo that respondents have standing to raise the issue on the deceased grantor's behalf, we also reject their contention that the ex parte order violated Mrs. Gamelin's rights. "[T]he appointment of a temporary conservator pursuant to . . . the Probate Code, without notice, the effect of which is to temporarily protect the person and to protect and preserve the estate of the alleged conservatee pending a hearing on the petition for the appointment of a [permanent] conservator, does not offend the concept of due process of law." *Conservatorship of Gray* (1970) 12 Cal.App.3d 513, 524 [90 Cal.Rptr. 776].)

The judgment is reversed. The court shall enter judgment for appellant and he shall recover costs on appeal.

Stone (S. J.), P. J., and Gilbert, J., concurred.

A petition for a rehearing was denied June 29, 1993, and respondents' petition for review by the Supreme Court was denied September 16, 1993.