TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

---

|  |  |  |
|---|---|---|
| OPINION | : |  |
|  | : | No. 97-311 |
| of | : |  |
|  | : | July 21, 1997 |
| DANIEL E. LUNGREN | : |  |
| Attorney General | : |  |
|  | : |  |
| ANTHONY M. SUMMERS | : |  |
| Deputy Attorney General | : |  |
|  | : |  |

---

THE HONORABLE TOM J. BORDONARO, JR., MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

May trained, unlicensed staff members of a community care facility perform incidental medical services with respect to a gastrostomy, colostomy, ileostomy, and the use of urinary catheters?

CONCLUSION

Trained, unlicensed staff members of a community care facility may perform incidental medical services with respect to a gastrostomy, colostomy, ileostomy, and the use of urinary catheters.

ANALYSIS

The Legislature has enacted a comprehensive statutory scheme, the Community Care Facilities Act (Health & Saf. Code, §§ 1500-1567.8; "Act"), **Footnote No. 1** to provide "a coordinated and comprehensive statewide service system of quality community care for mentally ill, developmentally and physically disabled, and children and adults . . . ." (§ 501, subd. (a).) A "community care facility" is defined as:

". . . any facility, place, or building that is maintained and operated to provide nonmedical residential care, day treatment, adult day care, or foster family agency services for children, adults, or children and adults, including, but not limited to, the physically handicapped, mentally impaired, incompetent persons, and abused or neglected children . . . ." (§ 1502, subd. (a).)

The question presented for resolution is whether trained but unlicensed staff members of a community care facility may perform "incidental medical services" with respect to a gastrostomy, colostomy, ileostomy, and the use of urinary catheters. **Footnote No. 2** We conclude that they may.

In 71 Ops.Cal.Atty.Gen. 190, 204 (1988), we concluded that nasogastric and gastrostomy

feeding could not be performed by an unlicensed home care companion because "substantial scientific knowledge and technical skill are necessary to their proper performance." What developments, if any, have occurred since 1988 that would cause a different conclusion with respect to unlicensed community care facility staff members?

In 1996 the Legislature amended section 1507 to provide:

"(a) A community care facility may provide incidental medical services. If the medical services constitute a substantial component of the services provided by the community care facility as defined by the director in regulations, the medical services component shall be approved as set forth in Chapter 1 (commencing with Section 1200) or Chapter 2 (commencing with Section 1250).

"(b) The department shall adopt emergency regulations for community care facilities for adults by February 1, 1997, to do all of the following:

"(1) Specify incidental medical services that may be provided. These incidental medical services shall include, but need not be limited to, any of the following: gastrostomy, colostomy, ileostomy, and urinary catheters.

"(2) Specify the conditions under which incidental medical services may be provided.

"(3) Specify the medical services that, due to the level of care required, are prohibited services. . . ." **Footnote No. 3**

Under the terms of section 1507, a community care facility is expressly authorized to provide incidental medical services including those furnished with respect to a gastrostomy, colostomy, ileostomy, and the use of urinary catheters. The issue to be resolved is whether such services must be performed by licensed health care professionals on behalf of the facility or whether trained but unlicensed staff members of the facility may perform the services.

In construing the language of section 1507, we are guided by well-established principles of statutory construction. The primary "objective of statutory interpretation is to ascertain and effectuate legislative intent." (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562.) "Every word, phrase, and sentence in a statute should, if possible, be given significance. [Citation.]" (*Larson* v. *State Personnel Bd.* (1994) 28 Cal.App.4th 265, 276-277.) "The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.]" (*Dyna-Med, Inc.* v. *Fair Employment and Housing Com.* (1987) 43 Cal.3d 1379, 1387.) "`Statements in legislative committee reports concerning the statutory purposes which are in accordance with a reasonable interpretation of the statute will be followed by the courts.'" (*O'Brien* v. *Dudenhoeffer* (1993) 16 Cal.App.4th 327, 334.) "If possible, the words should be interpreted to make them workable and reasonable [citations], practical [citation], in accord with common sense and justice, and to avoid an absurd result [citations]." (*Halbert's Lumber, Inc.* v. *Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1239-1240.)

With these principles of statutory construction in mind, we find that in 1989 the Legislature enacted a statutory scheme (Stats. 1989, ch. 1437, § 1), authorizing incidental medical services with respect to a gastrostomy, colostomy, ileostomy, the use of urinary catheters, and other medical or surgical procedures for certain children with special health care needs to be performed by the following persons:

"(1) A parent trained by health care professionals where the child is being placed in, or is currently in, a specialized foster care home.

"(2) Group home staff trained by health care professionals pursuant to the discharge plan of the facility releasing the child where the child was placed in the home as of November 1, 1993, and who is currently in the home.

"(3) A health care professional, where the child is placed in a group home after November 1, 1993. . . ." (Welf. & Inst. Code, § 17710, subd. (h).)

Thus, while the Legislature has elected to have incidental medical services provided by health care professionals for children placed in group homes after November 1, 1993, prior to that date unlicensed staff members were authorized to provide such services.

In 1990, in connection with supportive services for children with developmental disabilities cared for at home, the Legislature provided:

"(a) Notwithstanding any other provision of law, an in-home respite worker may perform gastrostomy care and feeding of clients of regional centers, after successful completion of training as provided in this section.

"(b) In order to be eligible to receive training for purposes of this section, an in-home respite worker shall submit to the trainer proof of successful completion of a first aid course and successful completion of a cardiopulmonary resuscitation course within the preceding year.

"(c) The training in gastrostomy care and feeding required under this section shall be provided by physicians or registered nurses through a gastroenterology or surgical center in an acute care hospital, as defined in subdivision (a) of Section 1250 of the Health and Safety Code, which meets California Children Services' Program standards for centers for children with congenital gastrointestinal disorders, or comparable standards for adults, or by a physician or registered nurse who has been certified to provide training by the center.

"(d) The gastroenterology or surgical center providing the training shall develop a training protocol which shall be submitted for approval to the State Department of Developmental Services. The department shall approve those protocols which specifically address all of the following:

"(1) Care of the gastrostomy site.

"(2) Performance of gastrostomy tube feeding.

"(3) Identification of, and appropriate response to, problems and complications associated with gastrostomy care and feeding.

"(4) Continuing education requirements.

"(e) Training by the gastroenterology or surgical center, of the certified physician or registered nurse, shall be done in accordance with the approved training protocol. Training of in-home respite workers shall be specific to the individual needs of the developmentally disabled regional center client receiving the gastrostomy feeding and shall be in accordance with orders from the client's treating physician or surgeon.

"(f) The primary care physician shall give assurances to the regional center that the patient's condition is stable prior to the regional center's purchasing in-home gastrostomy care for the client through an appropriately trained respite worker.

"(g) Prior to the purchase of in-home gastrostomy care through a trained respite worker, the regional center shall do all of the following:

"(1) Ensure that a nursing assessment of the client, performed by a registered nurse, is conducted to determine whether an in-home respite worker, licensed vocational nurse, or registered nurse may perform the services.

"(2) Ensure that a nursing assessment of the home has been conducted to determine whether gastrostomy care and feeding can appropriately be provided in that setting.

"(h) The agency providing in-home respite services shall do all of the following:

"(1) Ensure adequate training of the in-home respite worker.

"(2) Ensure that telephone backup and emergency consultation by a registered nurse or physician is available.

"(3) Develop a plan for care of the gastrostomy site and for gastrostomy tube feeding to be carried out by the respite worker.

"(4) Ensure that the in-home respite worker and the gastrostomy services provided by the respite worker are adequately supervised by a registered nurse.

"(I) For purposes of this section, `in-home respite worker' means an individual employed by an agency which is vendored by a regional center to provide in-home respite services. These agencies include, but are not limited to, in-home respite services agencies, home health agencies, or other agencies providing these services." (Welf. & Inst. Code, § 4686.)

Here, again, the Legislature has enacted a special statute allowing trained but unlicensed persons to perform gastrostomy care and feeding in specified circumstances.

These related statutory enactments indicate that the Legislature believes incidental medical services with respect to gastrostomies, colostomies, ileostomies, and the use of urinary catheters may be performed by unlicensed persons when appropriately trained. Returning to the provisions of section 1507, we believe it would be unreasonable to conclude that the sentence "[a] community care facility may provide incidental medical services" was intended by the Legislature to authorize community care facilities to provide the services in question only through licensed health care professionals such as physicians and registered nurses. In 1996, when section 1507 was amended to specifically refer to incidental medical services performed in connection with gastrostomies, colostomies, ileostomies, and the use of urinary catheters, physicians and registered nurses were already authorized to perform such services. (71 Ops.Cal.Atty.Gen. 190, *supra*.) Rather, then, in keeping with Welfare and Institutions Code sections 4686 and 17710, the Legislature amended section 1507 in 1996 as a special statute authorizing trained but unlicensed persons to perform incidental medical services in conjunction with the specified surgeries and procedures under the described circumstances.

This interpretation of section 1507 is consistent with the statute's legislative history. At the time of the 1996 amendment, the proposed changes in statutory language were explained in the report of the Assembly Committee on Human Services for its hearing of April 16, 1996, in part as follows:

"Adult day care facilities provide non-medical care and incidental medical services for adults who are developmentally or mentally disabled and to persons 60 years of age or older. More and more, facilities are accepting disabled adults who are in greater need of assistance with the activities of daily living and who require incidental medical services. The [Department of

Developmental Services] is committed to placing larger numbers of these individuals into the community. This bill would require [the Department of Developmental Services] to adopt emergency regulations by February 1, 1997 that do the following:

"1) Specific incidental medical services that may be provided by a [community care facility], including, but not limited to, gastrostomy, colostomy, ileostomy, and urinary catheters . . . ."

In the report of the Assembly Committee on Appropriations for its hearing on May 8, 1996, the fiscal effects of the proposed legislation were described in part as follows:

"Unknown, probably minor, costs to community care facilities for staff training on the care of persons needing these incidental medical services. To some extent, these costs could be recovered through higher rates paid to the facility for care. General Fund costs would increase for the state share of any rate increases."

The report of the Senate Health and Human Services Committee for its hearing on July 3, 1996, stated in part:

"Supporters argue that AB 2835 increases community placement options for persons in need of incidental medical services. This measure would enable clients to receive incidental medical services in a setting that is less costly than a health facility. It would provide regulations and specificity as to what is considered incidental medical services."

When the legislation was adopted, it contained the following declaration of legislative purpose: "It is the intent of the Legislature to ensure that adults with incidental medical needs have access to community care facilities." (Stats. 1996, ch. 517, § 1.)

We believe that the above legislative history fully supports the conclusion that the Legislature amended section 1507 in 1996 to allow trained but unlicensed staff members of a community care facility to perform incidental medical services with respect to gastrostomies, colostomies, ileostomies, and the use of urinary catheters. Such construction of section 1507 gives significance to every word of the statute and provides a practical, reasonable result consistent with related statutory provisions. Whatever conditions or restrictions are necessary in performing the specified services by unlicensed staff members of a community care facility may be imposed by regulations adopted by the Department of Social Services.

We conclude that trained, unlicensed staff members of a community care facility may perform incidental medical services with respect to a gastrostomy, colostomy, ileostomy, and the use of urinary catheters.

\* \* \* \* \*

**Footnote No. 1**
All references hereafter to the Health and Safety Code are by section number only.
**Footnote No. 2**
A gastrostomy is a surgical operation creating an opening into the stomach, a colostomy surgically creates an opening into the colon, an ileostomy establishes an opening in the lower third of the small intestine, and a urinary catheter is a tube inserted through the urethra into the bladder. (Stedman's Medical Dict. (5th lawyers' ed. 1982) pp. 237, 301, 578, 691.)
**Footnote No. 3**
The "director" is the Director of Social Services (§ 1502, subd. (c)), "Chapter 1" licenses clinics, "Chapter 2" licenses heath facilities, and the "department" is the Department of Social Services (§ 1502, subd. (b)).