TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | |
|---|---|
| OPINION : | |
| : | No. 98-104 |
| of : | |
| : | August 18, 1998 |
| DANIEL E. LUNGREN : | |
| Attorney General : | |
| : | |
| GREGORY L. GONOT : | |
| Deputy Attorney : | |
| General | |
| : | |

_____

THE HONORABLE BILL MORROW, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

If a physician pays a portion of the expenses of a clinical laboratory that is located in the office of another physician and orders laboratory tests from the laboratory but is not physically present when the tests are performed, may the physician charge a patient a fee for the tests in addition to the fee charged by the laboratory?

CONCLUSION

If a physician pays a portion of the expenses of a clinical laboratory that is located in the office of another physician and orders laboratory tests from the laboratory but is not physically present when the tests are performed, the physician may not charge a patient a fee for the tests in addition to the fee charged by the laboratory.

ANALYSIS

Business and Professions Code section 655.5 Footnote No. 1 provides in part as follows:

"(a) It is unlawful for any person licensed under this division or under any initiative act referred to in this division, or any clinical laboratory, or any health facility when billing for a clinical laboratory of the facility, to charge, bill, or otherwise solicit payment from any patient, client, or customer for any clinical laboratory service not actually rendered by the person or clinical laboratory or under his, her or its direct supervision unless the patient, client, or customer

is apprised at the first time of the charge, billing, or solicitation of the name, address, and charges of the clinical laboratory performing the service . . . .

"· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

"(c) It is also unlawful for any person licensed under this division or under any initiative act referred to in this division to charge additional charges for any clinical laboratory service that is not actually rendered by the licensee to the patient and itemized in the charge, bill, or other solicitation of payment. This section shall not be construed to prohibit any of the following:

"(1) Any itemized charge for any service actually rendered to the patient by the licensee.

"(2) Any summary charge for services actually rendered to a patient by a health facility, as defined in Section 1250 of the Health and Safety Code, or by a person licensed under this division or under any initiative act referred to in this division if the standardized billing form used by the facility or person requires a summary entry for all clinical laboratory charges.

"· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

"(e) A violation of this section is a public offense and is punishable upon a first conviction by imprisonment in the county jail for not more than one year, or by imprisonment in the state prison, or by a fine not exceeding ten thousand dollars ($10,000), or by both that imprisonment and fine. A second or subsequent conviction is punishable by imprisonment in the state prison.

"(f)(1) Notwithstanding subdivision (e), a violation of this section by a physician and surgeon for a first offense shall be subject to the exclusive remedy of reprimand by the Medical Board of California if the transaction that is the subject of the violation involves a charge for a clinical laboratory service that is less than the charge would have been if the clinical laboratory service providing the service billed a patient, client, or customer directly for the clinical laboratory service, and if that clinical laboratory charge is less than the charge listed in the clinical laboratory's schedule of fees pursuant to subdivision (b).

"(2) Nothing in this subdivision shall be construed to permit a physician and surgeon to charge more than he or she was charged for the laboratory service by the clinical laboratory providing the service unless the additional charge is for service actually rendered by the physician and surgeon to the patient." **Footnote No. 2**

We are asked to determine whether, under the terms of subdivision (c) of section 655.5, **Footnote No. 3** a physician may charge a fee for laboratory tests where (1) the tests are performed in a clinical laboratory located in the office of another physician, (2) the ordering physician is not physically present when the tests are performed, and (3) the ordering physician pays a portion of the expenses of the laboratory. We conclude that the physician may not charge a fee in addition to the fee charged by the laboratory in such circumstances.

In interpreting the language of section 655.5, we rely upon well settled rules of statutory interpretation. "The overriding objective of statutory construction is to ascertain and effectuate

legislative intent." (*Larson* v. *State Personnel Bd.* (1994) 28 Cal.App.4th 265, 276.) "In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent." (*Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826.) The words are to be given "their usual and ordinary meaning." (*DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601.) "'Statements in legislative committee reports concerning the statutory purposes which are in accordance with a reasonable interpretation of the statute will be followed by the courts . . . .' [Citation.]" (*O'Brien* v. *Dudenhoeffer* (1993) 16 Cal.App.4th 327, 334; see *People* v. *Cruz* (1996) 13 Cal.4th 764, 773-774, fn. 5.)

Under the terms of section 655.5, if the clinical laboratory service is not "actually rendered" by the ordering physician, he or she may bill the patient for the service only if the patient is apprised at the outset of the name, address, and charges of the laboratory performing the service. (§ 655.5, subd. (a).) Section 655.5 also provides that the physician may make no "additional" charge to the patient for such service not actually rendered by the physician and itemized in the bill. (§ 655.5, subd. (c).)

The language of subdivision (c) of section 655.5 was added to the statute in 1992. (Stats. 1992, ch. 85, § 2.) The purpose of the 1992 amendment was explained in an uncodified portion of the legislation as follows:

"The Legislature finds and declares that health care costs in California are increasing at a rate which makes it difficult for many California citizens and employers to continue to afford health care coverage. It is the intent of the Legislature, in adopting this act, to address one aspect of the health cost escalation spiral in a way that will reduce the cost of health care to California residents. The Legislature intends to eliminate the ability of a health provider to increase the price of a clinical laboratory test when the health provider performs no actual service. The Legislature does not intend to prohibit a reasonable drawing and processing fee for laboratory specimens prepared in the office of a physician and surgeon." (Stats. 1992, ch. 85, § 1.)

The purpose of the 1992 legislation was also described in the report of the Senate Committee on Business and Professions, dated January 27, 1992, as follows:

"1. This bill was heard on 4/22/91 by the Business and Professions Committee, and was put over so that the bill's opponent, the California Medical Association, could offer alternative amendments to the bill's provisions that would be satisfactory to the Committee in assuring that charges are only made for services actually provided by a physician.

"2. This bill is sponsored by the California Clinical Laboratory Association in order to eliminate the mark-up of clinical lab services by physicians who pass them on to the patient. The sponsor claims that this 'mark up' practice results in additional costs to the patient or 3rd-party payer insurance company) which may be substantially higher than justified by any added value actually provided by the physician's interpretation of the test results. This bill's legislative intent states that the bill's provisions are not intended to prohibit a reasonable 'drawing and processing fee' for lab specimens prepared in the physician's office.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"5. The publication Current Opinions of the Council on Ethical and Judicial Affairs of the American Medical Association (1989) contains principles or rules relating to medical ethics. In this publication at Section 8.08, ethical standards of practice relating to laboratory services and billing are stated, in part, as . . . 'A physician should not charge a mark-up, commission, or profit on services rendered by others. A physician should not charge for services that are not provided. A mark-up is an excessive charge that exploits patients if it is nothing more than a tacked on amount for a service already provided and accounted for by the laboratory. A physician may make an acquisition charge or processing charge. The patient should be notified of any such charge in advance.'

"6. Supporters of this bill from the clinical laboratory industry claim that the majority of the patients are receiving bills from doctors who mark up fees for laboratory tests. An example of marking up tests occurs when a physician orders a 'panel' of six to twenty-six tests. The physician then marks up the laboratory fees in progression by breaking down the panel and assigning a marked-up charge for each component. (i.e. Clinical Lab charges a physician $30 for a six panel test. The physician then adds $3 for each panel (6 x $3 = $18) and bills the patient for the lab charge plus the mark-up = $48)."

It is thus apparent that the enactment of what is now subdivision (c) of section 655.5 was intended to prevent mark-up fees (i.e., "additional charges") which artificially inflate a patient's bill for clinical laboratory tests. The legislation was not intended to preclude physicians from charging for their services in evaluating the results of the tests (i.e., a "service actually rendered to the patient by the licensee").

In the described circumstances, the physician is not performing the laboratory tests for the patient. Rather, the tests are performed in a separate office by a technologist. The physician's services are limited to reading and interpreting the results of the tests. The testing itself is not a "service actually rendered to the patient by the [physician]" for which the physician may charge independently and in addition to the clinical laboratory's fee for the tests. The fact that the physician is responsible for a portion of the laboratory's expenses does not alter the statutory requirements. Allocation of expenses and income is a separate matter to be dealt with between the physician and the laboratory, not between the physician and the patient.

Finally, we note that under the terms of subdivision (a) of section 655.5, a physician may charge for services not actually rendered by him, or under his direct supervision, if, upon initial billing, he apprises the patient of the name, address, and charges of the clinical laboratory performing the services. The only restriction on this practice under section 655.5 is that the fee contain no *additional* charges for services not actually rendered by the physician. (§ 655.5, subd. (c).) In effect, then, the physician may "pass through" to the patient the amount *actually* charged by the clinical laboratory, with no mark-ups of any kind.

We conclude that if a physician pays a portion of the expenses of a clinical laboratory that is located in the office of another physician and orders laboratory tests from the laboratory but is

not physically present when the services are performed, the physician may not charge a patient a fee for the tests in addition to the fee charged by the laboratory.

\* \* \* \* \*

---

**Footnote No. 1**
All undesignated section references herein are to the Business and Professions Code.
**Footnote No. 2**
A "person licensed under this division" includes a physician. (§§ 2050, 2051.)
**Footnote No. 3**
Sections 650, 650.01, and 650.02 also deal with referrals of patients by physicians and other licensees (see 79 Ops.Cal.Atty.Gen. 225 (1996)); the terms of these statutes are beyond the scope of this opinion.

---